## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## ROCK ISLAND DIVISION

| | | |
|---|---|---|
| **STURM & FIX LLP,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No.:  4:03-CV-4086 |
| | ) | |
| v. | ) | |
| | ) | |
| **H. VINCENT HARSHA, ET AL.** | ) | |
| | ) | |
| Defendants. | ) | |

_____


### PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED
### PROPOSED FINDINGS OF FACT AND
### CONCLUSIONS OF LAW


    Plaintiff, Sturm & Fix LLP moves this Court for leave to file amended proposed findings of fact and conclusions of law in the form of a proposed Order appended hereto.  Paragraph 17 has been added for further clarification of a question posed by this Court at Trial Transcript p. 43, line 16.  The amended finding of fact directly addresses this question.  Plaintiff believes there is no prejudice here, as Pl.'s Ex. 1 was admitted without objection, and the inserted paragraph 17 is drawn from the same, and this Motion has not been unreasonably delayed.


                                            STURM & FIX LLP

                                      By:  ___/s/ John E. Cepican_____
                                             John E. Cepican
                                             101 West Second Street, Suite 304
                                             Davenport, IA 52801
                                             563-323-9731
                                             563-323-9709 (Telefax)
                                             jec@cepicanpatent.com

FOR THE CENTRAL DISTRICT OF ILLINOIS<br>ROCK ISLAND DIVISION

| | | |
|---|---|---|
| **STURM & FIX LLP,** | ) | |
| | ) | |
|    **Plaintiff,** | ) | **Case No.:  4:03-CV-4086** |
| | ) | |
| v. | ) | |
| | ) | |
| **H. VINCENT HARSHA, ET AL.** | ) | |
| | ) | |
|    **Defendants.** | ) | |

## **ORDER**

I.  BACKGROUND.

This is breach of contract action brought by the law firm of Sturm & Fix, LLP (formerly Henderson & Sturm, LLP) (hereinafter, "S&F"), against its former client New Womyn, LLC (hereinafter "New Womyn") and against H. Vincent Harsha (hereinafter "Harsha") for the recovery of fees and costs for services rendered in defending New Womyn in a patent infringement lawsuit (Civil Action No. 4:00-CV-04081-JBM, captioned Brava, LLC et al. v. New Womyn, Inc., et al.) previously before this Court (hereinafter the "Patent Suit").  S&F's breach of contract claims against Defendant Daniel E. Kaiser have been dismissed without prejudice, because S&F has been unable to locate Mr. Kaiser for service of process.

S&F seeks to recover unpaid fees and costs in the amount of $306,082.83 from Harsha based on a personal note from Harsha and based on an oral contract for services rendered.

A bench trial was conducted on December 15, 2005.  Attorney, John Cepican appeared on behalf of S&F.  Harsha, appeared on behalf of himself and New Womyn.

## II. FINDINGS OF FACT

1. At the time this action was commenced and during the pendency of the Patent Suit, New Womyn, LLC was a Delaware limited liability company with a principal place of business in Moline, Illinois. Amended Complaint at ¶ 6.

2. Harsha was and is a resident of Illinois and a managing member of New Womyn, LLC. Pl.'s Ex. 2 and Ex. 6. Answer to Plaintiff's Amended Complaint at ¶4. Trial Transcript at p. 11, 1.6, p. 26, 1.8.

3. Harsha is a licensed attorney with the State of Illinois.

4. S&F is a limited liability partnership with offices in Des Moines, Iowa, Davenport, Iowa, and Virginia. Amended Complaint at ¶3. Pl.'s Ex. 3.

5. At all times pertinent to this action, S&F had the following present or former partners, namely, Michael Sturm, Richard Fix, John Cepican, William Wright, Thomas J. Oppold, H. Robert Henderson, and Curtis A. Bell. Amended Complaint at ¶3.

6. Michael Sturm, Richard Fix, John Cepican and Curtis Bell were and are Iowa residents. Amended Complaint at ¶3.

7. Thomas Oppold and H. Robert Henderson were Iowa residents and are now Minnesota residents. Amended Complaint at ¶3.

8. William Wright was and is a resident of Virginia. Amended Complaint at ¶3.

9. At the bench trial on December 7, 2005, Mr. Cepican testified that Harsha had a previous relationship with S&F's senior partner, Mr. H. Robert Henderson. Trial Transcript at p.13, 1.24.

10. Mr. Cepican further testified at trial that he attended a meeting, with Mr. Harsha and Mr. Henderson, regarding representing New Womyn in the Patent Suit. Trial Transcript at p. 13, line 25.

11. At the time of the meeting Harsha and Mr. Daniel Kaiser were the managing members of New Womyn. Pl.'s Ex. 6.

12. Mr. Cepican further testified that during that meeting, Mr. Henderson specifically asked Harsha whether Harsha had the money to pay S&F's fees if S&F agreed to represent New Womyn in the Patent Suit. Mr. Cepican testified that in response to Mr. Henderson's question, Harsha answered yes, he did have the money to pay S&F's fees. Trial Transcript at p. 14, line 4.

13. Mr. Cepican further testified at trial that based on Harsha's representation, combined with Mr. Henderson's relationship with Harsha, S&F agreed to represent New Womyn.

14. Mr. Cepican further testified at trial that during the course of the Patent Suit, S&F invoiced New Womyn on a monthly basis for attorneys fees and costs incurred in the previous month, with interest on overdue balances. Trial Transcript at p. 5, line 25, p.32, line 21; Pl's Ex. 1.

15. Mr. Cepican further testified at trial that at all times during S&F's representation of New Womyn in the Patent Suit, S&F looked to Harsha for payment of its invoices, because S&F knew that Harsha was "the money behind New Womyn." Trial Transcript at p. 14, line 6, p.37, line 22.

16. Mr. Cepican further testified at trial that after a period of several months without receipt of payments from Harsha, S&F finally demanded that Harsha make a payment of all fees and costs incurred to date. Trial Transcript at p. 14, line 7;

17. On May 31, 2001, the outstanding balance was $161,451.94. Pl.'s Ex. 1, May 31, 2001, Invoice 19296, p. 5.

18. Mr. Cepican further testified at trial that on June 8, 2001 Harsha signed a personal note agreeing to pay S&F $40,000 per month toward the outstanding balance of its past invoices for services rendered and for the anticipated monthly invoices for services to be performed through the claim construction hearing in the Patent Suit. Trial Transcript at p. 11, line 11; Pl's Ex. 2.

19. The personal note was offered into evidence by Mr. Cepican at trial as Plaintiff's Exhibit 2 without objection from Defendants. Trial Transcript at p. 8, line 7;

20. In Requests for Admissions, Harsha admitted to signing the personal note. Mr. Cepican offered the Requests for Admission into evidence at trial as Pl.'s Exhibit 2 without objection from Defendants.

21. Mr. Cepican further testified at trial that S&F continued its legal representation of New Womyn in the Patent Suit through the claim construction hearing, through summary judgment motions and up to two weeks before the scheduled trial date, when Harsha informed S&F that he would not make any additional payments to S&F, at which point S&F filed its motion to withdraw as counsel in the Patent Suit. Trial Transcript at p. 13, line 12;

22. Mr. Cepican further testified at trial that on December 6, 2001 the Patent Suit court conducted a hearing on S&F's motion to withdraw. Trial Transcript at p. 22 line 25. The

relevant portion of the hearing transcript from the Patent Suit was offered into evidence at the trial by Mr. Cepican as Pl's Exhibit 4.

23. The Patent Suit court ultimately granted for S&F's motion to withdraw. Trial Transcript at p. 23, line 2.

24. Mr. Cepican further testified at trial that the unpaid balance on Harsha's personal note is $80,000. Trial Transcript at p 13, line 21.

25. Mr. Cepican further testified at trial and offered into evidence as Pl's Exhibit 1 a document showing the unpaid balance of S&F's invoices.

26. Mr. Cepican further testified at trial that the legal work performed by S&F attorneys in the Patent Suit was necessary and reasonable, that the issues presented during the course of the Patent Suit were complex, and that S&F attorneys prevailed in nearly every motion filed by it and prevailed against nearly every motion filed by opposing counsel. Further, with respect to the claim construction hearing, S&F's attorneys obtained the claim construction from the court that it asserted and resulted in settlement negotiations with defendant's counsel, which theretofore was unwilling to enter into settlement negotiations. Trial Transcript at p. 19, line 10 through p. 20, line 23. Further, Mr. Cepican entered into evidence as Pl.'s Ex. 4, p. 9, line 17, a statement from the trial judge in the Patent Suit during the hearing on S&F's motion to withdraw as counsel, wherein the judge stated that S&F's attorneys had done a "fantastic job" representing New Womyn in that case.

27. In support of the reasonableness of the amount of S&F's fees and costs and for comparison purposes, Mr. Cepican further testified at trial and offered into evidence as Pl's Exhibit 5, sections of the *AIPLA Report of the Economic Survey 2003*, published by the

American Intellectual Property Law Association (AIPLA) identifying typical billing rates for patent legal work.

28.    Mr. Cepican further testified at trial the rates charged by the S&F attorneys that performed legal services in the Patent Suit ranged from $200 to $250.  Trial Transcript at p. 12, line 14.

29.    Also in support of the reasonableness of the rates charged by S&F attorneys and for comparison purposes, Mr. Cepican further testified at trial and offered into evidence as Pl's Exhibit 5, sections of the *AIPLA Report of the Economic Survey 2003 Economic Survey*, identifying the mean average hourly billing rates for private practice patent attorneys as being $252 in 2000, $286 in 2002, $292 in the Chicago area and $268 in the Mineapolis-St. Paul area. Trial Transcript at p. 12, line 19 to p. 13, line 2.

30.    At trial, Defendants did not object to any of Mr. Cepican's testimony, nor did Defendants object to the entry any of Plaintiff's Exhibits offered into evidence by Mr. Cepican.

31.    Defendants did not dispute the accuracy of the amount of the unpaid balance of the personal note entered into evidence by S&F, nor did Defendants proffer any contradictory testimony nor attempt to enter into evidence any documents or things upon which it could rely to dispute the reasonableness or legitimacy of the amount of the fees which S&F asserts it is owed by Defendants for services rendered.

### III.   CONCLUSIONS OF LAW

1.    The Court has personal jurisdiction over the parties and venue is appropriate in this judicial district pursuant to 28 U.S.C. 1391(a) because, at the time this action was

commenced, all Defendants resided in this judicial district. Furthermore, none of the parties timely objected to the Court's exercise of personal jurisdiction over them or objected to this venue.

2.   The Court has subject matter jurisdiction over the claims pursuant to 28 U.S.C. § 1332 because, as identified under the findings of fact, there is complete diversity between the parties and the amount in controversy exceeds $75,000.

3.   The law of the state of Illinois is applicable to this case. *Springfield Oil Drilling Corp. v. Weiss*, 2003 U.S. Dist. LEXIS 14936 at *11 (N.D. Ill. 2003) (citing Klaxon *co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)) ("A federal court sitting in diversity looks to the conflict-of-law rules in the state in which it sits to choose the substantive state law applicable to the case."). A court is obligated to choose the applicable law "even in the absence of a 'true conflict'" in the respective states' laws at issue. *Id.* at *10 (citing *Hystro Prods., Inc. v. MNP Corp.*, 18 F.3d 1384, 1387 (7th Cir. 1994). "In dealing with choice-of-law issues in the area of contract law, the Illinois Supreme Court has applied the 'most significant contacts' test from the Second Restatement of Conflicts.'" *Id.* (quoting *GATX Leasing Corp. v. Nat'l Union Fire Ins. Co.,* 64 F.3d 1112, 1115 (7th Cir. 1995). Under the "most significant contacts" test, the factors relevant to a choice-of-law decision include 'the place of the contracting, the negotiation, performance, location of the subject matter of the contract, and the domicile, residence, place of incorporation and businesses of the parties.'" *Id.* (quoting *Palmer v. Beverly Enters.*, 823 F.2d 1105, 1109-10 (7th Cir. 1987). Here, the Defendants are all either domiciled in Illinois or were former Illinois entities with principal offices in Illinois. The legal representation of Defendants which formed the underlying basis of this breach of contract action was before the federal court

in Illinois. Thus, despite whatever other ties S&F and Defendants may have to Iowa, the most significant contacts are with the state of Illinois.

### Harsha's Personal Note to S&F.

4.  As identified under the Findings of Fact, Harsha did not object to S&F offering the personal note into evidence at trial. Furthermore, Harsha admitted to signing the personal note. Additionally, Harsha did not proffer any testimony contradicting Mr. Cepican's testimony that S&F performed legal services up to and beyond the claim construction hearing in the Patent Suit. Nor did Harsha dispute the accuracy of the amount of the unpaid balance of the personal note asserted by S&F as identified on Pl's Ex. 2. Because Harsha admitted to signing the personal note, and offered no facts or testimony upon which the Court could find the personal note unenforceable, Plaintiff's are entitled to judgment as a matter of law that Harsha is obligated to pay S&F the unpaid balance on the personal note in the amount of $80,000.

### S&F's Remaining Unpaid Fees for Services Rendered

5.  "In civil actions brought by attorney-plaintiffs to recover compensation for professional services performed under an alleged contract, the usual rules governing breach of contract actions apply because 'the liability to pay for legal services stands upon the same footing as other agreements.'" *Wildman, Harrold, Allen and Dixon v. Gaylord*, 740 N.E.2d 501, 508 (Ill. App. 2000) (quoting *Laff v. Chapman Performance Products, Inc.*, 379 N.E.2d 773 (Ill. App. 1978). "In an action for attorney fees based on a breach of contract or *quantum meruit* theory, the plaintiff-attorney's prima facie case includes proof of the following: (1) the existence of an attorney-client relationship, (2) the nature of the services rendered, (3) the amount of time expended, and (4) the result, if any, obtained by the client." *Id.* at 509 (citing *Greenbaum & Brown, Ltd. v. Braun*, 410 N.E.2d 303 (Ill. App. 1980). A plaintiff-attorney must also furnish

sufficient facts and computations to establish by a preponderance of the evidence, that the services rendered were necessary and that the amount of fees sought is fair, just and reasonable. *Id.* "In a civil trial, the necessity of legal services performed and the reasonableness of the amount charged are questions of fact." *Id.* In a bench trial, "[t]he trial judge, sitting as the trier of fact, decides these issues based on the weight of the competent evidence." *Id.* "Evidence sufficient to support a civil judgment for attorney fees may be comprised solely of witness testimony." *Id.*

6. It is not questioned by either party, and it is beyond dispute that an attorney client-relationship existed between New Womyn and S&F. Furthermore, the uncontradicted and unrebutted testimony of Mr. Cepican leaves little doubt that an express oral contract existed between Harsha and S&F for payment of S&F's fees, at S&F's customary rate, for legal services incurred in connection with the Patent Suit.

7. Through the testimony of Mr. Cepican, S&F asserted that it had an express oral contract with Harsha for payment of all its fees and costs incurred in connection with the Patent Suit. Mr. Cepican testified that Harsha was the only representative of New Womyn at the meeting discussing payment to S&F for representing New Womyn in the Patent Suit. Mr. Cepican also testified that during that meeting Harsha was expressly asked by S&F whether <u>he</u> (Harsha) had the money to pay S&F's attorneys fees if S&F agreed to represent New Womyn. In response Harsha answered "yes." Furthermore, Mr. Cepican testified that Harsha had a prior relationship with the senior counsel of S&F. Furthermore, Mr. Cepican testified that S&F understood that Harsha was the "money behind New Womyn".

8. Mr. Cepican's testimony went undisputed and unrebutted by Defendants at trial. Accordingly, in view of the testimony and evidence presented by S&F, and in view of the fact

that Defendants did not present any contradictory testimony or other evidence to rebut Mr. Cepican's testimony, the Court concludes that there was an express oral contract between Harsha and S&F for payment of S&F's legal services at S&F's customary rate.

9. "Where an attorney and client enter into an express contract for representation, the terms of the express contract control the compensation due the attorney." *Id.* at 511. (citations omitted). "Nevertheless, compensation due an attorney pursuant to an express contract must still satisfy certain professional standards." *Id.* (citations omitted). Rule 1.5 of the Illinois Rules of Professional Conduct requires that all fees for legal services be reasonable. *Id.* (citing 134 Ill. 2d R. 1.5(a). The following factors should be considered in determining the reasonableness of the fees sought.

> (1) the time and labor required, the novelty and difficulty of the questions involved, the skill requisite to perform the service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services, and
>
> (8) whether the fee is fixed or contingent.

*Id.* (quoting 134 Ill. 2d R. 1.5(a)).

10. Harsha and New Womyn are liable to S&F in the amount of $306,082.83 for legal services rendered in connection with the Patent Suit. Harsha is liable for the two remaining payments on the Harsha note, a total of $80,000, which would be applied against the aforementioned amount. S&F presented evidence at trial that its fees and costs for legal services,

less the amount of payments made by Harsha on Harsha's personal note, amounted to the aforementioned $306,082.83. In support of the reasonableness of S&F's fees, S&F offered into evidence, without objection by Defendants, the AIPLA Economic Report which identifies that the rates charged by S&F attorneys that were involved in the Patent Suit were comparable to or less than the mean average hourly rates charged by other patent attorneys in the Central region of the US. Furthermore, Mr. Cepican testified that the issues presented in the Patent Suit were complex, that the litigation was contentious and that S&F obtained very favorable results for the Defendants during the Patent Suit, a fact which was even acknowledged by the trial judge in the Patent Suit. Defendants did not object to any of Mr. Cepican's testimony, nor did Defendants proffer any testimony at trial to challenge, rebut and contradicted Mr. Cepican's testimony or any other evidence presented at trial.

 Whereby, this Court finds Harsha and New Womyn jointly and severally liable in the account amount of $306,082.83, plus interest on this unpaid balance, and Harsha also liable under the personal note in the amount of $80,000, payment of which is to be applied against the aforementioned account amount.

                 _____
                 Judge

**CERTIFICATE OF SERVICE**

      I hereby certify that on January 9, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

      H. Vincent Harsha
      1630 5th Avenue
      Moline, IL 61265

      /s/ John E. Cepican
      John E. Cepican  Bar #00838
      101 West Second Street, Suite 304
      Davenport, IA 52801
      563-323-9731
      563-323-9709 (Telefax)
      jec@cepicanpatent.com